**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **JUAN A.V.,** | Civil Action No.  25-13472 (MCA) |
| **Petitioner,** | |
| v. | **MEMORANDUM OPINION** |
| **YOLANDA PITTMAN, et al.,** | |
| **Respondents.** | |

This matter comes before the Court on Petitioner Juan A.V.'s[1] Petition for a writ of habeas corpus based on his re-detention under 8 U.S.C. § 1226(a) in July 2025 after being released on an order of recognizance in April 2023.  He has also filed a motion seeking release under *Lucas v. Hadden*, 790 F.2d 365 (3d Cir. 1986), and a motion for a temporary restraining order ("TRO Motion") based on alleged delays in his immigration proceedings and inadequate medical care at his current detention facility.  (ECF Nos. 16, 21.)  Having considered the record and the parties' arguments, the Court denies the Petition without prejudice and denies the pending motions for release.

## I.    RELEVANT BACKGROUND

Petitioner is a citizen of the El Salvador who entered the United States within inspection at an unknown place and time.  (*See* Declaration of Supervisory Detention and Deportation Officer Paul Silva ("Silva Decl."), at ¶ 3.)  On May 12, 2011, Petitioner's status was adjusted to that of a lawful permanent resident pursuant to INA § 245.  (*Id.* at ¶ 4.)  It is undisputed that he has deep

---

[1] Juan A.R. is a Lawful Permanent Resident ("LPR") in removal proceedings.

ties in the United States, including his United States citizen father, three United States citizen children, and other close relatives. (ECF No. 21-5, Pet. Decl. at ¶ 11.)

On August 2, 2019, Petitioner pleaded guilty to Endangering the Welfare of a Child, Sexual Conduct with a Child by a Caregiver, in violation of N.J. Stat. Ann. §§ 2C:24-4A(1) and was sentenced to a term of imprisonment of five years.[2] (*Id*. at ¶ 5.) After lodging a detainer, U.S. Immigration and Customs Enforcement ("ICE") served Petitioner a Form I-862 Notice to Appear ("NTA") on April 23, 2021, charging him as removable from the United States based on his conviction for a crime of child abuse pursuant to Section 237(a)(2)(E)(i) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1227(a)(2)(E)(i). (*Id.* at ¶¶ 6-7.)

Petitioner applied for cancellation of removal under INA § 240A(a) on October 7, 2021 (amended on June 30, 2022). He also filed an application for asylum, withholding of removal, and relief under the Convention Against Torture, in the alternative, on November 3, 2021. (ECF No. 4-2, Declaration of Glykeria Teji ("Teji Decl.") at ¶ 13.)

On April 5, 2022, ICE arrested Petitioner following his release from state custody. (Silva Decl. at ¶ 8.) On August 22, 2022, an immigration judge denied the Petitioner's applications for relief and ordered Petitioner removed to El Salvador. (*Id.* at ¶ 9.) On September 3, 2022, Petitioner filed an appeal to the Board of Immigration Appeals ("BIA"), and the BIA remanded the proceedings back to immigration court on June 21, 2023. (*Id.* at ¶ 10.)

On April 25, 2023, ICE released Petitioner from custody on an Order of Recognizance ("OREC"). (*Id.* at ¶ 11; ECF No. 10-3, OREC.) The OREC does not provide a stated reason for release, but Petitioner contends, and Respondents do not dispute, that he was released due to

---

[2] Although Petitioner's crime is discussed in his underlying immigration proceedings, the Court need not and does not recount the details here.

medical complications from having diabetes.[3]  (ECF No. 1, Petition at ¶¶ 26-28; ECF No. 4-2, Declaration of Glykeria Teji at ¶ 20.)

Respondents contend that they re-detained Petitioner because he violated the terms of his release.  Specifically, on January 23, 2024, Petitioner enrolled in the Compliance Reporting Terminal ("CART") program, which required him to report to the ICE Newark Field Office every three months.  Although it is undisputed that Petitioner technically failed to report to the ICE Newark Field Office on August 2, 2024, he contends through his counsel that he failed to report in person due to severe foot pain and reported electronically a few days later and was otherwise compliant with his reporting requirements.  (ECF No. 4-2, Teji Decl. at ¶ 22.)  Respondents contend that ICE deactivated him from CART and referred him to ICE Newark Fugitive Operations for re-arrest due to the missed appointment.  (*Id.* at ¶¶ 12-13.)

A year later, on July 17, 2025, ICE arrested Petitioner under INA § 236(a), 8 U.S.C. § 1226(a), the provision of the INA that grants immigration officials discretionary authority to detain aliens during the pendency of their removal proceedings based on flight risk or dangerousness. According to the Silva Declaration,

> Petitioner was served Form I-200, Warrant of Arrest for Alien, list of Pro Bono Legal Service Providers, and the Online Detainee Locator System (ODLS) with the Privacy Statement for Detainees, both in the English and Spanish languages. ICE Officers advised the Petitioner of his right to exercise a free call to the consulate of his origin, he refused to respond. During intake processing, the Petitioner invoked his right to speak to an attorney and refused to answer questions or sign any documents. ICE Officers afforded Petitioner the opportunity to make phone calls, which he accepted.

---

[3] Petitioner contends that he experienced a foot infection as a complication of diabetes, and was released for that reason.  (Petition at ¶¶ 26-28.)

(*Id.* at ¶ 14.)  According to Petitioner,  he was unexpectedly detained on his way to work.  (Petition at ¶¶ 3, 32.)  When his counsel contacted ICE regarding his arrest, Officer Alexander Cabezas told her that Petitioner "had been re-detained 'because he is an aggravated felon.'"  (*Id.* at ¶¶ 33-34; Teji Decl. ¶ 30.)

Petitioner did not seek a bond hearing after his arrest; instead, filed the instant habeas petition the same day (ECF No. 1) and was briefly housed at Elizabeth Detention Center.  Petitioner has been held in an out-of-state detention facility in Adelanto, California, since July 23, 2025.  (*Id.* at ¶ 15.)  It appears undisputed that he eventually requested a bond hearing and was denied bond on October 15, 2025.[4]  (ECF No. 14, Reply Brief at 11.)

The Petition challenges his detention under § 1226(a) and contends that Respondents detained Petitioner without cause or proper notice (Petition at ¶¶ 29, 32), which is inconsistent with their own regulations and long-standing policies, thereby violating the Administrative Procedure Act ("APA"), the *Accardi* doctrine, and his due process rights.  (Petition at ¶¶ 44-66.)

## II.    DISCUSSION

The Constitution guarantees that the writ of habeas corpus is available to every individual detained within the United States.  *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const. Art. I, § 9, cl. 2).  District courts have the power to grant writs of habeas corpus.  28 U.S.C. § 2241(a).  A district court's authority includes jurisdiction to hear habeas challenges to immigration-related detention.  *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).  The burden is on

---

[4] At the time Petitioner filed his Petition, he had not exhausted his administrative remedies by requesting a bond hearing.  Because he subsequently did so, and the IJ denied bond on October 15, 2025, the Court considers his claims exhausted.

petitioner to show that he is in custody in violation of the Constitution or federal law.  28 U.S.C. § 2241(c)(3); *Walker v. Johnston*, 312 U.S. 275, 286 (1941).

The Court begins with Petitioner's due process argument.  He challenges the lawfulness of his re-detention under 8 U.S.C. § 1226(a) and contends that "[d]ue process, at a bare minimum, requires the government to advance a valid reason for detention and provide an opportunity to be heard <u>prior to that detention</u>, neither of which were satisfied by detaining [Petitioner] outside his home and keeping him detained for months without explanation."  (ECF No. 14, Reply Brief at 5 (emphasis added).)

The detention statute at issue, 8 U.S.C. § 1226(a), states that a noncitizen "may be arrested and detained pending a decision on whether the alien is to be removed from the United States."  8 U.S.C. § 1226(a).  When a noncitizen is arrested, a DHS officer makes an initial custody determination.  *See* 8 C.F.R. § 236.1(c)(8).  DHS "may continue to detain the arrested [noncitizen]."  8 U.S.C. § 1226(a)(1).  DHS may also, in its discretion, release the noncitizen, "provided that the [noncitizen] must demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the [noncitizen] is likely to appear for any future proceeding."  8 C.F.R. § 1236.1(c)(8).  If DHS decides to release the noncitizen, it may set a bond or place other conditions on release.  *See* 8 U.S.C. § 1226(a)(2).  If DHS determines that a noncitizen should remain detained during the pendency of removal proceedings, a noncitizen may request a custody redetermination hearing before an Immigration Judge.  *See* 8 C.F.R. §§ 236.1(d)(1), 1003.19, 1236.1(d).  "The immigration judge is authorized to exercise the authority in section 236 of the Act . . . to detain the [noncitizen] in custody, release the [noncitizen], and determine the amount of bond, if any, under which the respondent may be released."  8 C.F.R. § 236.1(d)(1).  Following the custody redetermination, the immigration judge may continue

detention of the noncitizen or release the him on bond or conditional parole. 8 U.S.C. § 1226(a); 8 C.F.R. § 1236.1(d)(1).

Petitioner contends that Respondents overstate their "broad discretion," under 8 U.S.C. § 1226(a) to detain Petitioner and cite to no law indicating that they can exercise discretion without any notice or opportunity to be heard. (Reply Brief at 14 at 6.) As explained above, § 1226(a) provides the opportunity for a bond hearing before an immigration judge following arrest, and § 1226(b) clearly states that "[t]he Attorney General <u>at any time</u> may revoke a bond or parole authorized under subsection (a), rearrest the alien under the original warrant, and detain the alien."[5] (emphasis supplied.)

Petitioner's claim that he is entitled to pre-deprivation notice is not based on the statute and is instead rooted in procedural due process. The Due Process Clause prohibits deprivations of life, liberty, and property without due process of law. U.S. Const. amend. V. A protected liberty interest may arise from a conditional release from physical restraint. *Young v. Harper*, 520 U.S. 143, 147–49 (1997). Thus, even when a statute like § 1226 allows the government to arrest and detain an individual, a protected liberty interest under the Due Process Clause may entitle the individual to procedural protections not found in the statute. *See id.* (Due Process requires pre-deprivation hearing before revocation of preparole).

These protections extend to noncitizens present in the United States. *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) ("[T]he Due Process Clause applies to all 'persons' within the United

---

[5] Moreover, district courts cannot review those discretionary decisions, as § 1226(e) states that "[t]he Attorney General's discretionary judgment regarding the application of this section shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section regarding the detention of any alien or the revocation or denial of bond or parole."

States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."); *Wong Wing v. United States*, 163 U.S. 228, 238 (1896) ("It must be concluded that all persons within the territory of the United States are entitled to the protection guaranteed by [the Fifth Amendment], and that even aliens shall not . . . be deprived of life, liberty, or property without due process of law."); *see also Trump v. J. G. G.*, 604 U.S. 670, 145 S. Ct. 1003, 1006 (2025) (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993)) (cleaned up) ("It is well established that the Fifth Amendment entitles aliens to due process of law in the context of removal proceedings."). The Supreme Court has held, however, that noncitizens who present themselves at the border or are apprehended shortly after crossing the border are entitled to only the due process protections provided by statute. *Contrast Zadvydas*, 533 U.S. at 693, with *DHS v. Thuraissigiam*, 591 U.S. 103, 138–140 (2020) (holding that an individual apprehended 25 yards into U.S. territory had not "effected an entry," and his due process rights related to his expedited removal were limited to those "provided by statute").

Here, Petitioner is an LPR in removal proceedings who has lived in the United States for decades and has three United States citizen children. He is plainly entitled to due process. Once a court finds that some constitutional due process is required, it determines what level of process is due. Courts have used the balancing test outlined in *Mathews v. Eldridge*, 424 U.S. 319 (1976) to answer that question. The Court also uses that test here.

"The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Id.* at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). "[I]dentification of the specific dictates of due process generally requires consideration of three distinct factors": (1) "the private interest that will be affected by the official action"; (2) "the [g]overnment's interest, including the function involved and the fiscal and

administrative burdens that the additional or substitute procedural requirement would entail," and (3) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards." *Id.* at 335.

The Third Circuit has not directly addressed whether a noncitizen who is subject to § 1226(a) and is released on recognizance has a right to notice or a hearing prior to re-detention. Some Courts outside this District have held that noncitizens released on recognizance under § 1226(a) have the same liberty interests as those of a United States citizen parolee or probationer. *See, e.g.*, *Guillermo M. R. v. Kaiser*, 791 F.Supp.3d 1021, 1033 (N.D. Cal. 2025) ("If a parolee serving out a sentence for a violent crime, and subject to highly restrictive conditions of release, has a sufficiently strong liberty interests to be entitled to a hearing prior to re-incarceration, then a non-citizen freed from civil detention on bond likely has a similar entitlement."). In *Guillermo M. R*, the court found that pre-deprivation notice is required where the petitioner was previously released by an immigration judge after a hearing.[6]  *Id.* at 1030 (finding that the petitioner "who was granted release by a neutral third-party IJ after a hearing" and had been free on bond for more than two years was entitled to pre-deprivation notice prior to re-detention).

As stated in the seminal criminal parole decision, "due process is flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972).  There, the Court explained that "[t]he essence of [criminal] parole is release from prison, before the completion of sentence, on the condition that the prisoner abide by certain rules during the balance of the sentence." *Id.* at 477.  But the *Morrissey* Court did not require that criminal parolees receive notice prior to or even at the time of their arrest. *See id.* at 485 ("due

---

[6] There are similarities between criminal parolees and noncitizens released from immigration detention.  Both can free from severe restraints on their liberty and can generally live with their loved ones, earn a living, and participate in their communities.

process requires that <u>after the arrest</u>, the determination that reasonable ground exists for revocation of parole should be made by someone not directly involved in the case") (emphasis added). The deprivation of liberty in *Morrissey* is not the parolee's initial arrest or detention; it is the potentially long period of detention in between his arrest and his final revocation hearing. As the Court in *Morrissey* explained, there are two distinct stages of parole revocation, i.e., arrest and final revocation, and that "[t]here is typically a substantial time lag between the arrest and the eventual determination by the parole board whether parole should be revoked." *Id.* at 485. "Given these factors, due process would seem to require that some minimal inquiry be conducted at or reasonably near the place of the alleged parole violation or arrest and as promptly as convenient after arrest while information is fresh and sources are available." *Id.* Pre-*Morrissey*, a parolee could languish in jail between his arrest and final revocation hearing without any inquiry as to the reason for the revocation. And after the final revocation occurred, he must also serve the remainder of his sentence without receiving credit for the time he spent on parole. *See id.* at 480 ("If a parolee is returned to prison, he usually receives no credit for the time 'served' on parole" and "may face a potential of substantial imprisonment.").

In contrast, § 1225(a) already provides significant procedural protections following the arrest or rearrest of noncitizens. As outlined by the Third Circuit,

> Section 1226(a) provides that "[o]n a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). The relevant implementing regulations state that a detainee under § 1226(a) may be released on bond by ICE or by an immigration judge (IJ) if the detainee "demonstrate[s] . . . that such release would not pose a danger to property or persons, and that [he] is likely to appear for any future proceeding." 8 C.F.R. § 236.1(c)(8). If denied release at the initial bond hearing, a § 1226(a) detainee may request a custody redetermination hearing before an IJ. *Id.* § 236.1(d)(1). That request will "be considered only upon a showing that the alien's circumstances have changed materially."

> *Id.* § 1003.19(e). Both the initial bond determination and subsequent custody decisions can be appealed to the Board of Immigration Appeals (BIA). *Id.* § 236.1(d)(3).

*Borbot v. Warden Hudson Cnty. Correctional Facility*, 906 F.3d 274, 275 (3d Cir. 2018).

In this case Petitioner was initially arrested in April 2022 by immigration officials following his parole from state prison. He was released from immigration detention in April 2023, and the Court credits his claim that he was released due to complications from diabetes. The regulations that authorize immigration authorities to release a noncitizen require that the noncitizen "demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons" and that the noncitizen is "likely to appear for any future proceeding." 8 C.F.R. § 1236.1(c)(8). It is not clear from the record whether immigration officials determined that Petitioner was neither a danger nor a flight risk prior to releasing him. Respondents detained Petitioner again in July 2025 purportedly due to a missed check-in appointment the year before and/or due to his criminal conviction. Indeed, Petitioner's counsel acknowledges that the latter reason was provided to her by an immigration officer shortly after his arrest.

Under the existing procedural protections of § 1226(a), Petitioner through his counsel could have immediately requested a bond hearing before an IJ and presented evidence to show he is not a flight risk or danger to the community. Admittedly, these procedures require a noncitizen to affirmatively seek a bond hearing rather than providing it as a matter of right, and the Court does not decide whether this process is sufficient in all cases, only the present one. Although there is some risk of an erroneous deprivation of liberty, that risk is far less where, as here, the Petitioner is represented by counsel and there is no evidence that he was prevented from obtaining a bond hearing following his arrest. Indeed, there is no indication that Petitioner could not request a bond hearing before an IJ, but he chose to file a habeas petition instead, perhaps anticipating that he would not be released due to his criminal conviction. As such, the Court cannot find that there

was a risk of an erroneous deprivation here where Petitioner had counsel and failed to utilize the procedures available to him.

Moreover, it is unclear how DHS would provide Petitioner with pre-deprivation notice and whether such additional procedures on top of existing ones would unduly burden the government's strong interest in detaining noncitizens who may pose a danger or be a flight risk. The government has a particularly strong interest in detaining a noncitizen, like Petitioner, who has a criminal conviction for sexual abuse of a minor and has missed a check-in, even if Petitioner has potentially valid reasons for missing that appointment. This strong interest justifies detention of Petitioner in the short period immediately following his arrest until he has the opportunity to ask for a bond hearing before an IJ.

For all these reasons, the Court finds that Petitioner is not entitled to additional due process protections, including pre-deprivation notice of the reason for revoking his release. Therefore, the Court denies his due process claim.

Petitioner also bring a claim under the *Accardi* doctrine, *see United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 268 (1954), and contends that Respondents have violated their own regulations in failing to provide him with pre-deprivation notice before detaining him. It is well settled that "rules promulgated by a federal agency that regulate the rights and interests of others are controlling upon the agency." *Leslie v. Attorney General of U.S.*, 611 F.3d 171, 175 (3d Cir. 2010) (citing *Columbia Broad. Sys., Inc. v. United States*, 316 U.S. 407 (1942));

Petitioner's *Accardi* claim fails because the regulations he claims the government violated are only applicable to noncitizens with final orders of removal under 8 U.S.C. § 1231. He relies on 8 C.F.R. § 241.4 (d),(l) which set forth procedures for the "[c]ontinued detention of inadmissible, criminal, and other aliens beyond the removal period," including procedures for both

release and the revocation of release.  (Emphasis added).  By its very terms, 8 C.F.R. § 241.4 applies to noncitizens with final orders of removal who have been detained beyond the initial 90-day removal period, and the decisions cited by Petitioner do not apply or extend those regulations to noncitizens who are still in removal proceedings and detained under § 1226(a). *See, e.g.*, *Ceesay v. Kurzdorfer*, 781 F.Supp.3d 137, 144 (W.D.N.Y., 2025) (analyzing 8 C.F.R. § 241.5 and addressing whether a noncitizen with a final order of removal who is released on an order of supervision is entitled to procedural due process when the government decides—in its discretion—to revoke that release); *Zhu v. Genalo*, 798 F.Supp.3d 400, 409 (S.D.N.Y., 2025) (same).

Petitioner also argues that his detention is unlawful because he has a pending motion for cancellation of removal and a pending I-130 application for family-related benefits. (ECF No. 1, Petition ¶¶ 45-46.)  Petitioner contends that under prior agency practice or guidance, noncitizens with pending motion for cancellation of removal and a pending I-130 application were not subject to detention, but he does not provide any evidence for his contention that these policies existed or applied to noncitizens with similar criminal convictions.  Petitioner's APA claim fails for the same reason.

Finally, Petitioner also seeks interim release based on *Lucas v. Hadden*, 790 F.2d at 367. There, the Third Circuit cited approvingly to *Johnston v. Marsh*, 227 F.2d 528 (3d Cir. 1955), which involved "an advanced diabetic [who] was, under conditions of confinement, rapidly progressing toward total blindness." *Id.* at 529.  Moreover, although "gravely ill," he was not released outright and "was granted bail on the condition that he enter a hospital to seek necessary medical care[.]" *Id.* at 528.  The Third Circuit has cautioned that "[v]ery few cases have presented extraordinary circumstances, and those that have seem to be limited to situations involving poor

health or the impending completion of the prisoner's sentence." *Landano v. Rafferty*, 970 F.2d 1230, 1239 (3d Cir. 1992).

Here, Petitioner acknowledges, and his medical records confirm that he is receiving treatment and monitoring for diabetes and related conditions. (*See* ECF No. 4-14.) He alleges, however, that he has experienced the worsening of preexisting vision loss, was initially denied a diabetic diet, which he began receiving in January 2026, was not provided adequate medical footwear, has a foot wound that for which he was prescribed an antibiotic but has not received consistent monitoring, and is experiencing psychological distress, but has declined medication. (*See* ECF No. 21-1 at 10-11; ECF No. 21-2 at 2-3; ECF No. 21-5, Pet. Decl. at ¶¶ 31-39.) Unlike the Petitioner in *Lucas*, Petitioner does not seek release to be hospitalized and seeks only outright release from detention. But these alleged inadequacies in his medical and mental health care, although troubling and cognizable in a civil action, do not rise to the level of extraordinary circumstances justifying his outright release from confinement pending a decision on his habeas petition.

Petitioner also notes that this Court previously ordered the release of medically vulnerable immigration detainees in the early months of the COVID-19 pandemic. *See Kolawole O.T. v. Ahrendt*, 466 F.Supp.3d 457, 472 (2020); *Cristian A.R. v. Decker*, 4 53 F. Supp. 3d 670, 689 (D.N.J. 2020) (finding the risk of "severe complications and death if [petitioners] contract COVID-19" warranted "the extraordinary remedy of release on bail, and ma[d]e bail necessary, to make the habeas remedy effective.") Subsequently, the Third Circuit also recognized the viability of a such a standalone habeas claim in *Hope v. Warden*, 972 F.3d 310, 324 (3d Cir. 2020). The Third Circuit warned, however, that "in recognizing the viability of this § 2241 claim [it is] not creating a garden variety cause of action" and "a possible habeas attack on the conditions of confinement,

[is] cognizable in a federal habeas action only in extreme cases," such as those which occurred during the COVID-19 pandemic. The Court held narrowly that given the "extraordinary circumstances that existed in March 2020 because of the COVID-19 pandemic, [it is] satisfied that their § 2241 claim seeking only release on the basis that unconstitutional confinement conditions require it is not improper." *Hope*, 972 F.3d 310, 324–25. The Third Circuit did not address "whether a § 2241 claim may be asserted in less serious circumstances." *Id.* at 325 n. 5, and did not approve standalone habeas claims for immigration detainees where those detainees could seek injunctive relief in an appropriate civil action.

The Petition does not bring a standalone habeas claim based on his conditions of confinement or inadequate medical care. Rather, he asks this Court to release him pending a decision on his habeas. Because the Court has resolved his underlying habeas petition and he has not met the standard for extraordinary circumstances, it denies his request for release.[7]

Finally, the Court denies Petitioner's TRO Motion (ECF No. 21) because it has found that his re-detention under § 1226(a) is not unlawful and he has not shown a likelihood of success on the merits of his underlying habeas claims. Petitioner cites delays in his underlying immigration proceedings, but the Petition does not explicitly challenge his detention as prolonged, and the Court does not reach that issue. *See e.g., German Santos v. Warden Pike County Correctional Facility*, 965 F.3d 203, 210 (3d Cir. 2020); *Borbot*, 906 F.3d at 280 (3d Cir. 2018) (leaving open

---

[7] Petitioner also asserts though his counsel that he was attacked by other detainees, which led to his hospitalization, and Respondents characterize this incident as a fight in which Petitioner was a participant. (ECF Nos. 26-27.) The Court does not attempt to resolve this factual dispute, which is also not cognizable in a habeas case. Nothing in this Memorandum Opinion prevents Petitioner from seeking relief on his inadequate medical care and conditions of confinement claims in an appropriate civil action, and he is free to file civil complaint within 30 days, which the Court will sever and transfer to the Central District of California, where Petitioner is currently confined, the incidents occurred, and the other relevant witnesses are located.

the possibility that, "despite an initial bond hearing, detention under § 1226(a) might become unreasonably prolonged, whether by virtue of government delay or some other cause"). The remedy for prolonged detention is not release but rather a bond hearing at which DHS has the burden to show danger to the community or flight risk by clear and convincing evidence. *See German Santos*, 965 F.3d at 213. Petitioner is free to seek habeas relief based on prolonged detention by filing an amended petition in this case or by filing a petition in the district of confinement.

For all the reasons explained in this Memorandum Opinion, the Petition and the pending motions for relief are denied without prejudice. An appropriate Order follows.

6/30/26

<u>*s/ Madeline Cox Arleo*</u>
**MADELINE COX ARLEO**
**United States District Judge**